## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| United States of America, ex rel. | ) |
| John Young d/b/a Nationwide Electrical | ) |
| 5627 Allentown Road, Suite 204-B | ) |
| Camp Springs, Md.  20746 | ) |
|  and | ) |
| Maryland Business Clergy Partnership | ) |
| 5627 Allentown Road, Suite 203 | ) |
| Camp Springs, Md.  20746 | ) |
| and | ) |
| Celestial Concrete Construction | ) |
| 3801 Enterprise Road | ) |
| Mitchellville, Md. 20721 | ) |
|   and | ) |
| Jane Doe | ) |
| 5627 Allentown Road, # 200 | ) |
| Camp Springs, Md.  20746 | ) |
| Plaintiffs/Relators. | ) |
| v. | ) |
| | ) |
| Eric Brown, official capacity and individually) | Civil Action No.: |
| Prince Georges County Government | )  Judge |
| 9200 Basil Court, Suite 500 | ) |
| Largo, Md.  20774 | ) |
|   and | ) |
| MGM National Harbor, LLC | ) |
| 120 Waterfront Street, Suite 500 | ) |
| Oxon Hill, Md. 20748 | ) |
|    and | ) |
|  Whiting Turner Construction, Inc. | ) |
|  300 East Joppa Road | ) |
|  Towson, Md.  21286 | ) |
|   and | ) |
| Schuster Construction, Inc. | ) |
| 3625 E. Monument Street | ) |
| Baltimore, Md.  21205 | ) |
|   and | ) |
| Bulldog Construction, Inc. | ) |
| 9301 Lanham Severn Road | ) |
| Lanham, Md.  20769 | ) |
| Defendants. | ) |

## COMPLAINT FOR DAMAGES AND CIVIL PENALTIES

COMES NOW Plaintiffs,  John Young d/b/a Nationwide Electrical  (Young), Maryland

1

Business Clergy Partnership ("MBCP"),  Celestial Concrete Construction ("Celestial"), and Jane

Doe ("doe"), by and through counsel, hereby files this Complaint; in the capacities of Relator for

the United States Government, individually and corporately, upon the following grounds that the

above Defendants jointly and severally, unlawfully conspired against them, thereby violating

their rights by: (1) knowingly making, used, or caused to be made or used false records or

statements to get false or fraudulent distributions paid or approved by the United States; and by

committing (2) RICO violations; (3) civil conspiracy; (4) negligently failing to comply with

HUD Section 3, 24 C.F.R. p.135 ; and (5) fraud/intentional misrepresentation. These allegations

are based upon personal knowledge, discussions with contracting parties and relevant documents.

This action also seeks damages, including punitive damages, redress of injuries, injunctive

and declaratory relief,  attorney's fees and costs, and other relief, all arising out of Defendants

MGM; Whiting Turner, Schuster and Bulldog Construction's violation of 18 U.S.C. §1961 *et*

*seq*., (RICO), 18 U.S.C. §1341 *et seq*., (Mail and Wire Fraud).

### I.  JURISDICTION

1.      This is a civil action arising under obtaining payment for false claims from the

Government, 31 U.S.C. § 3729(1) and (2); § 3730; § 3732,  and the racketeering laws of the

United States, 18 U.S.C. § 1964(c) (civil remedies for RICO violations).  This Court therefore

has original jurisdiction over this action pursuant to 28 U.S.C. § 1331; § 3732(a), and

supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. §1367.

2.      Venue is proper in this judicial district per 28 U.S.C. § 1391.

### II.  PARTIES

3.       Plaintiff  Nationwide Electrical Services is a limited liability company MBE organized

and in good standing under the laws of the State of Maryland, also a Section 3 Business Concern.

4.    Maryland Business Clergy Partnership ("MBCP"), is an incorporated partnership of churches and n n    employers located Prince Georges County, attended by area low income residents.

5.    Plaintiff Celestial Concrete Construction is a corporation domiciled and doing business in the State of Maryland, also a Section 3 Business Concern and DBE/MBE, as defined herein.

6.    Plaintiff Jane Doe is a low or very low income resident of Prince Georges County, Md and qualifies as a Section 3 Resident.

7.    Defendant Eric Brown is an individual employed by the Department of Housing and Community Development of the Prince George's County Government (the "County"), a municipality sub-recipient of funds from HUD and located in the State of Maryland.

8.    Defendant, MGM National Harbor, LLC is a corporation located in the State of Maryland at all times herein licensed by the County to develop the MGM Casino project in Oxon Hill, Md.

9.    Defendant, Whiting-Turner Construction, Inc., at all times relevant herein, is a Maryland corporation, hired as the Prime contractor for the casino project by MGM National Harbor, LLC.

10.    Defendant Schuster Construction, Inc. is a corporation organized under the laws of the State of Maryland and operating as a concrete sub-contractor for Whiting Turner Construction.

11.    Defendant Bulldog Construction is a corporation domiciled in Prince George's County, hired by Whiting Turner and Schuster to be the minority/DBE contractor on the MGM project.

### III.   FACTS RELATED TO 31 U.S.C. § 3729(1);(2)  FALSE CLAIMS

12.    In 2013, the Maryland Video Lottery Facility Location Commission awarded a video lottery operation license [sic – gambling] license to Prince George's County for construction and ownership of a **$1.2 Billion Dollar gambling casino** in Prince Georges County, Md.

13.    On June 9, 2014, Prince Georges County and MGM National Harbor, LLC entered into a

Community Benefits Agreement ("CBA") to assure that "thousands of jobs, tens of millions in payroll, and robust local minority business opportunities will stay in the County.  Local and minority-owned businesses are among the biggest beneficiaries of this agreement", per MGM.

14.     Since at least 2013, it has been Defendants Brown, MGM, Whiting-Turner, Schuster, and Bulldog's ("Defendants") practice to systematically and illegally promote the Casino Project for minority business participation and defined contract percentages.  As alleged below, Defendants disguise minority business actual construction contract participation as a "community benefit" and promise to thru their "best efforts" guarantee minority businesses and local residents thirty (30%) percent of work related to the total $1.2 Billion in construction cost. In addition and in support of its community benefits approach, Defendants have made unlawful financial certifications as minority business enterprises to encourage continued local and State government support for the Casino Project and unlawfully failed to comply with HUD Section 3 regarding minority business contracting opportunities and hiring area low – to moderate income individuals for employment at the Casino project or during the construction process.

15.     As a direct result of Defendants' improper practices, federal housing and employment programs, including CGBG, HOME, ESG, HOPWA, NSP and Housing Capital funds have been caused to pay false or fraudulent claims for reimbursement minority business economic development opportunities and low to moderate income individuals employment and training opportunities that would not have been paid but for the Defendants' illegal business practices.

16.      The False Claims Act ("Act"), 31 U.S.C. §3729 et seq, was originally enacted during  the Civil War in 1863.  It has since been substantially amended to enhance the government's ability to recover losses sustained as a result of fraud against it and provides a private cause of action for individuals to bring a claim on behalf of the United States of America.  31 USC § 3729 provides:

(a) Liability for Certain Acts – Any person who –

(1) knowingly presents, or causes to be presented to an officer or employee of the United States government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval.

(2)  knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

(3)  conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

(4)  has possession, custody, or control of property or money used, or to be used by the Government and, intending to defraud the Government or willfully to conceal property, delivers, less property than the amount for which the person receives a certificate or receipt;

(5)  authorized to make or deliver a document certifying receipt of property used, or to be used by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(6)  knowingly buys, or receives as a pledge of an obligation or dept, public money from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge the property, or

(7)  knowingly makes, uses, or causes to be made or used, a  false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government, is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the damages which the Government sustains because of the act of that, except that if the court finds that –

(A)  the person committing the violation of this subsection furnished officials of the United States responsible for investigating false claims violations with all information known to such person about the violation within 30 days after the date on which the defendant  first obtained the information;

(B)  such person fully cooperated with any Government investigation of such violation; and

(C)  at the time such person furnished the United States with the information about the violation, no criminal prosecution, civil action, or administrative action had commenced under this title with respect to such violation, and the person did not have actual knowledge of the existence of an investigation into such violation; the court may access not less than 2 times the amount of damages which the Government sustains because of the act of the person.  A person violating this subsection shall also be liable to the United States Government for the costs of a civil action brought to recover any such penalty or damages.
(b)  Knowing and Knowingly Defined – For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information –

(1)   has actual knowledge of the information;

(2)   acts in deliberate ignorance of the truth or falsity of the information, or

(3)   acts in reckless disregard of the truth or falsity of the information, no proof of specific intent to defraud is required.

(c)   Claim Defined – For the purposes of this section, "claim"

(1)   includes any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, of if the Government will reimburse such contractor, grantee, or other recipient of any portion of the money or property which is requested or demanded.

17.   The Act further provides at 31 U.S.C. § 3802 that:

(a)(1)   Any person who makes, presents, or submits, or causes to be made, presented or submitted, a claim that the person knows or has reason to know –

(A)   is false, fictitious, or fraudulent;

(B)   includes or supported by any written statement which asserts a material fact which is false, fictitious, or fraudulent;

(C)   includes or is supported by any written statement that –

(i)   omits a material fact;

(ii)   is false, fictitious, or fraudulent as a result of such omission; and

(iii)   is a statement in which the person making, presenting, or submitting such statement has a duty  to include such material fact;

Or

(D)   is payment for the provision of property or services which the person has not provided as claimed shall be subject to, in addition to any other remedy that may be prescribed by law, a civil penalty of not more than $5,000 for each such claim.  Except as provide in paragraph (3) of this subsection, such person shall also be subject to an assessment, in lieu of damages sustained by the United States because of such claim, of no more than twice the amount of such claim, or the portion of such claim, which is determined under this chapter to be in violation of the preceding sentence.
(2)   Any person who makes, presents, or submits, or causes to be made, presented, or submitted, a written statement –

(A)  the person knows or has reason to know -

(i)  asserts a material fact which is false, fictitious or fraudulent, or

(ii)(I)  omits a material fact; and

(II)  is false, fictitious, or fraudulent as a result of such omission;

(B)  in the case of a statement described in clause (ii) of subparagraph (A), is a statement in which the person making, presenting, or submitting such statement has a duty to include such material fact; and

(C)  contains or is accompanied by an express certification or affirmation of the truthfulness and accuracy of the contents of the statement, shall be subject to, in addition to any other remedy that may be prescribed by law, a civil penalty of not more than $5,000 for each such statement…

18.  The Act at 31 U.S.C. §3730(b) provides:

Civil actions for false claims

(b)  Actions by private persons. –

(1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government.  The action shall be brought in the name of the Government.  The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.

(2)A copy of the complaint and written disclosure of  substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure.  The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the Defendant until the court so orders.  The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

(3) The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal under paragraph (2).  Any such motions may be supported by affidavits or other submissions in camera.  The defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure.

(4)  Before the expiration of the 60-day period or any extensions obtained under paragraph (3), the Government shall –

7

(A)  proceed with the action, in which case the action shall be conducted by the Government or

(B)  notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action.

(5)  When a person brings an action under this subsection, no person other that the Government may intervene or bring a related action based on the facts underlying the pending action.

19.    Based on these provisions, qui tam plaintiffs seek through this action to recover on behalf of the United States damages and civil penalties arising from Defendant Brown's making or causing to be mad false or fraudulent records, statements and/or claims in connection with its receipt of funds from HUD and administering the County's housing and economic development programs.    Since the County Department of Housing and Community Development annually and intentionally submits and accepts program funding from HUD, it knew  or should have known that its misrepresentations regarding compliance with HUD section 3, would cause the submission of thousands of claims to these housing and community development programs for grants and housing vouchers that were not eligible for program reimbursement. See Exhibit A.

20.     On September 29, 2014, Defendant Brown submitted to the U.S. Dept. of Housing and Urban Development ("HUD") the County's final FY 2014 Consolidated Annual Performance and Evaluation Report ("CAPER") for the purpose of continuing and receiving the annual housing and community development funding from HUD - approximately $90 million FY 2014.

21.   The CAPER states that the County will seek to adhere "to federal employment opportunities created by law such as HUD's Section 3 which is applicable to CDBG"…  See CAPER p. 33.

22.    The CAPER also states "DHCD is responsible for monitoring the CDBG…programs to ensure compliance with federal statutory and regulatory requirements"…  See CAPER p. 45.

23.    Per the CAPER, All projects assisted with HUD funds were monitored during this fiscal

year.  "This includes monitoring construction projects subject to Section 3"… See CAPER p. 46.

24.    Lastly, the CAPER states "Inspection deficiencies were noted with corrective action and follow up inspections were performed within the appropriate timeframe."  See CAPER p. 46.

25.    The purpose of Section 3 is to ensure that employment, training, and other economic opportunities generated by HUD financial assistance shall, to the greatest extent feasible, be directed to low and very low income persons, and to business concerns which employ and provide economic opportunities to low and very low income persons.  24 C.F.R. § 135.1(d).

26.    Section 3 of the Housing and Urban Development Act – 24 U.S.C. § 1701, et seq., applies to Community Development Block Grants, numerous other federal funding programs, and to any recipient of HUD funding for certain construction- related projects and other public construction.

27.    With respect to any Section 3 project, Recipient is required to ensure that at least 10% of all new hire are Section 3 residents, with respect to community development projects, Recipient is required to ensure that at least 30% of all new hires are Section 3 residents,  and 10% of  all construction contracts.  31 U.S.C. § 3729 (1) and (2) make it unlawful to submit false claims.

28.    Defendant Brown is the Recipient official of Section 3 covered assistance within the meaning of that term as set forth at 24 C.F.R. § 135.5.

29.    Per 24 C.F.R. § 135.5, the MGM casino project is a **<u>Section 3 covered project</u>** (ie – construction, conversion or rehabilitation of housing, other public construction including all improvements [regardless of ownership] assisted with housing or community development assistance) based on the fact that the same parties to the Video Operation License, and the Community Benefits Agreement ("CBA") – Prince George's County govt. and MGM National Harbor, co-own and fund the Community Foundation; **Exh B** (aka "National Harbor Community Outreach Fund"), a recipient of HUD grant funding from the County and a party to the CBA. See

County Office of Audit's Community Foundation grant receipts (presumably CDGB) at Exh B.

30.     Plaintiffs have submitted complaint forms to HUD offices to make HUD aware of this problem and to confirm the fact that the MGM casino project is a Section 3 covered project. See acknowledgement of receipt of HUD complaints attached hereto at Exhibit C.

31.     Upon information, opinion and belief at the time Defendant Brown submitted the CAPER, he knew or should have know that his representations regarding Section 3 compliance (paragraphs 12 – 16 above) were incorrect, thus the County fraudulently received HUD funds.

32.     Over the past months Plaintiffs, especially MBCP Executive Director, Bruce Branch, has repeatedly complained and made both the County and MGM/Whiting Turner officials aware of the persistent mistreatment and disregard for minority contractors. Both the County and MGM have simply ignored Plaintiffs pleas and left Plaintiffs to simply boil in their own frustration.

33.     On March 15, 2015, Plaintiffs convened a town hall meeting which was attended by over 300 minority contractors and low to moderate income county residents to discuss this situation.

34.     On March 25, 2015 MGM announced it had hired its 1000th member of the construction work force.  In Section 3; 30% or 300 of those new hires must be Section 3 residents. See Exh D.

35.     On April 14, 2015, MBCP on behalf of Plaintiffs again sent letters to the County regarding this troubling situation, requesting a meeting.  See Exh. E.  Thereafter, this Complaint was filed.

36.     For reasons unknown, although there already exist a 2006 Local Business Agreement for the subject property and community, the County Office of Audits has not performed an audit or review of compliance regarding minority business participation and local resident employment.

## IV.  RICO FACTS

37.     In May,2006 Bulldog Construction defrauded a State of Maryland Minority Affairs Office ("MDOT") by claiming disadvantaged business status, and upon information, opinion and belief

conspired with Schuster Construction to defraud the minority business community out of money. See copy of Bulldog Construction's listing as an MDOT Certified Contractor attached at Exh. F.

38.     Defendant Bulldog via its owner, E. David Byorick, and Defendant Schuester devised schemes/stories to defraud MDOT via certification as a disadvantaged business, and utilized wires and emails to accomplish the schemes, in violation of 18 U.S.C. §1341 and § 1343.

39.     Defendants are a group of sophisticated companies and individuals who knowingly defrauded the U.S. Treasury in connection with HUD community development funding.

40.     Defendants engaged in a complex and longstanding scheme to obtain minority business participation credit for minority business enterprises (MBE's) working on the casino project.

41.     Specifically Defendants carried out this fraud through numerous sham bidder-entities that purported to qualify as a "Minority Business Enterprise"; namely Bulldog Constructions Co.

42.     Because Defendants obtained sizable "housing and community development" funding and "minority business utilization" credit pursuant to the parties "Community Business Agreement" for which they were not qualified, the U.S. Treasury has suffered $180,000,000 [$90,000,000 annually for 2013 - 2014] in damages, and local businesses have suffered at most, $360,000,000 of damages based on the casino project MBE goals. See Exhibit G attached hereto.

43.     Defendants, among other things, schemed as follows: (1) Bulldog misrepresented to MDOT that for certain reasons it should be certified as a disadvantaged business enterprise ("DBE") for the purpose of being selected to perform on large construction projects throughout the  Maryland and mid-Atlantic region; (2) Schuster fraudulently informed MDOT, other local MBEs; and public contracting officials that Bulldog Construction was its minority subcontractor, although at the time Schuster knew or should have know that Bulldog Construction was not a disadvantaged business enterprise; (3) Schuster regularly worked with Whiting Turner as a

concrete supplier; and (4) Schuster and Bulldog fraudulently convinced construction project managers to pay them large sums of money, ie. $10,000,000.00, as Schuster's minority subcontract partner.   Having utilized emails, wires, and telephone to accomplish their schemes/artifices, Defendants conducted racketeering activity as defined by 18 USC § 1961(B).

44.     In the period 2010 – 2014, Whiting-Turner and Schuster, knowingly falsely represented by suggestion, to similarly situated contracting officials and projects (The John and Frances Angelos Law Center – 2010; University of Maryland Medical Center – 2012; and MGM National Harbor Casino - 2014) the Bulldog scheme, that their team satisfied MDOT minority business goals via subcontracting with Bulldog. See project summaries attached at Exhibit H.  The above schemes are related in that each shares a similar purpose (to defraud), a similar result (theft of funds), and similar method of commission (Bulldog and Schuster) intentional misrepresentations.

45.     Defendants violated 18 U.S.C. § 1962(b) and 1962(c), by engaging in an enterprise engaged in activities that affect interstate commerce, and by controlling, conducting and participating in the conduct of the enterprise through a pattern of racketeering activity with a clear threat of future criminal activity.

## V.  The Enterprise, the Members and the Racketeering Activity

### A.    The Enterprise

46.    Bulldog and Schuster formed an association in fact which constituted an enterprise.  Within this enterprise, Bulldog and Schuster established a system of making decisions in furtherance of their various criminal activities, independent from their respective regular business practices.

47.     The enterprise was formed to promote, obtain and conduct joint ventures and construction business through both legitimate and illegitimate means. The enterprise had an existence well beyond the racketeering acts complained of herein. Importantly, Bulldog and Schuster

maintained a system of obtaining subcontracts and money obtained from projects, individuals and entities like Plaintiffs herein.

48.     The enterprise engaged in a pattern of defrauding local businesses and persons.  Indeed, the enterprise was used to defraud not only MDOT and Prince George's County minority business enterprises, but also Celestial Concrete Construction, Contract Design and Development, LLC, Wayne Frazier 5 other unnamed individuals/business in the Maryland Area.

49.     In the State of Maryland and elsewhere, Bulldog and Schuster being persons associated with the enterprise described in paragraphs 37 - 45 above, which was engaged in, and the activities of which, affected interstate commerce, did unlawfully and willfully conduct and participate, directly and indirectly, in the conduct of affairs of the enterprise through a pattern of racketeering activity, as defined by Title 18, United States Code, Section 1961(5), involving multiple acts of mail fraud and wire fraud, as chargeable in violation of Title 18, United States Code §§ 1341, 1343, and 1346.

**B.      The Members**

50.     Whiting-Turner, Inc. is a Baltimore based prime construction contractor and has worked with Schuster Construction, Inc. as its concrete sub-contractor, and Bulldog Construction, Inc., as their MBE concrete services provider. Whiting-Turner is associated with both Schuster and MGM National Harbor, and the property development enterprise, minority business utilization agreement and local employee hiring. There was a nexus between Whiting-Turner, the minority business utilization enterprise and the pattern of racketeering.

51.     The MGM National Harbor, LLC who hired Whiting Turner as prime contractor minority business enterprises (MBEs) and local area residents wishing to find employment reasonably and

justifiably relied upon MGM National Harbor's public representations that Defendant Whiting-Turner would competently and fairly select DBEs to participate in the casino project.

52.     MGM National Harbor and the County have declared in writing that its contractors, including Whiting – Turner and Schuster would caused to be delivered via best efforts $360,000,000 **(thirty ("30%" percent of the $1.2 Billion casino project construction contract work)** to local business and residents. See MGM Collective Business Agreement attached hereto at Exhibit I.. MGM by its  own statements on minority contracting and selection of Whiting Turner as prime contractor, indicates that Whiting – Turner controlled the enterprise.  There was a nexus between Whiting – Turner control of the enterprise and the pattern of racketeering.

53.     Whiting Turner and Schuster marketed the Whiting Turner Team and various other entities, generally Bulldog Construction, as a prime construction contract firm that promised minority business opportunity and that it would both reach and exceed its MBE goals. There was a nexus between Whiting Turner, Schuster, and Bulldog Construction's, continuing criminal activity, the minority business participation enterprise and the pattern of racketeering.

54.     By several interstate emails and telephone calls from Whiting Turner,  and/or Schuster, to Celestial Concrete and Construction Design and Development, LLC furthered the Schuster - Bulldog Fraud Conspiracy on or about September 14, 2014, and several weeks thereafter.

55.      At a glance, looking at the Enterprise and the Members, based on the facts of this case, 1)there are numerous unlawful acts; 2) the length of time over which the acts were committed is greater than three years; 3)the acts are all similar; 4) there are at least five victims; 5) the core number of perpetrators is three, namely Whiting-Turner, Schuster and Bulldog; and 6)the character of the unlawful activity always involves sham bidder entities via use of the wire and mails, therefore it appears beyond reasonable argument that a RICO pattern has been established.

**C.  The Racketeering Activity**

**a.  Sham bidder entities that purport to qualify as "minority business enterprises"**

**(i)  Year 2006 Improper Certification of Bulldog Construction as a DBE.**

56.     In 2006, Bulldog Construction caused the Maryland Department of Transportation ("MDOT") to certify it as a minority contractor through telephone call, regular mail, wire and via electronic mail.  Bulldog Construction was certified as a Disadvantaged Business Enterprise ("DBE") at that time.  See copy of MDOT-Certified Contractors attached hereto at Exhibit F. As part of the certification process, applicants for certification, such as Bulldog are required via affidavit to state that each has not provided incorrect information or made false statements. See Uniform Certification Application, in pertinent parts, attached hereto at Exhibit J.

**(ii)    Refusal of Whiting Turner for any other minority Contractor work, except Bulldog**

57.     On September 15, 2014, Joanna Harmon of Whiting-Turner, as a matter establishing **relatedness and continuity**,  emailed the minority contractors association, to assure the contractors association that Whiting Turner was strongly considering hiring Mike Bryant, of Celestial Concrete to provide MBE services.  According to the email Whiting Turner was setting up a meeting for M. Dohohoe, A. Gladston and B. Bogdanowicz to meet with Mike Bryant and confirm an actual concrete contracting opportunity for Mr. Bryant's firm – Celestial Concrete. My Bryant did not receive a call back from Whiting Turner before the final bid closing date. Shortly thereafter, Wayne Frazier wrote to "Mr. [Anton D.] Nikodemus" - MGM Resorts International, CFO – Regional Operations, 3600 Las Vegas Blvd, Las Vegas, Nevada 89101, informing MGM of the difficulties local contractors were having in securing work on the casino project, and the fact that Schuster was utilizing a false certified minority contractor know as "Bulldog".  See copy of email from Joanna Harmon to Wayne Frazier and W. Frazier letter,

attached hereto as Exhibit K.   In furtherance of this scheme, MGM did not bother to respond to

Mr. Frazier's letter. See also Plaintiffs affidavits attached hereto at Exhibit K.

58.    The Whiting Turner/Schuster/Bulldog minority contacting certification fraud scheme

violated both the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343 and 1346, in that

the scheme was intended to fraudulently shield money from bonafide local minority businesses

through the use of the USPS mail system, e-mail messages and telephone calls MGM

International from various locations including Las Vega, Nevada  to Oxon Hill, Maryland.

**b.  Predicate Acts**

59.      For the purpose of executing  the scheme to defraud, in particular, minority businesses

of Prince George's County, Maryland out of contracting opportunities by causing contract funds

to be delivered to sham and improperly certified MBEs by means of telephone communications

and/or emails, in violation of Title 18, United States Code, Sections 1346 as incorporated

through § 1341 and § 1343:

60.      In connection with racketeering acts (i) thru (iv). above, in the State of Maryland and

elsewhere, Whiting – Turner and Schuster, aided and abetted each other by  executing and

attempting to execute the MBE scheme and artifice to defraud contractors of Maryland.   As part

of Defendants broad fraud, other victims of separate DBE frauds include: L.S. Caldwell and

Assoc., Contract Design and Development, LLC and at least 5 other unnamed business victims.

61.    In the instant case,  Plaintiffs were the intended victims of theft of  MBE fraud by causing

funds to be delivered and transmitted to business other than local MBES as follows:

a.    On December18, 2014, after exhaustively attempting to secure some form of casino

project construction work, Celestial Concrete Construction, a validly certified MDOT MBE,

was rejected outright and denied any contract or subcontract for concrete work on the casino

project. Upon information and belief, Celestial believes it was rejected because according to

Whiting – Turner, it already had its concrete MBE – Bulldog. See letter at  Exhibit  L.

b.  On or about Jan. 31, 2015, telecom from Whiting Turner to John Young re: Fire Alarms.

c.  On February 5, 2015, e-mail from Whiting Turner to John Young re: Parking Garage bid.

**c.    Defendants Participated in the Enterprise Through Pattern of Racketeering.**

62.  Whiting , Schuster and Bulldog participated in numerous predicate acts that were continuous

and related, and constitute a pattern of racketeering activity as defined by 18 U.S.C. § 1961(5).

63.  The predicate acts engaged in by Whiting Turner, Schuster and Bulldog are related in that

each amounted to a scheme or schemes with the common goal to defraud  local  and minority

contractors, in order to cause MBE contract money away from MBE accounts.

64. The continuity of the illegal conduct can be shown because the predicate acts complained of

began in Mid - 2006 and continued occurring through April 2015, and thereby amounted to a

closed period of repeated conduct incurring over a substantial period of time.

**d. RICO Injury**

65. The Plaintiffs have individually and collectively been and continue to be injured in their

businesses as a result of Defendants' violations of 18 U.S.C. § 1962(c). As a direct and

proximate result of Defendants' acts, Plaintiffs have suffered actual and consequential damages.

66. Defendants are liable to Plaintiffs for treble damages, together with all costs and reasonable

attorneys' fees, as provided for in Title 18, United States Code, Section 1964(c).

<u>COUNT ONE—CONSPIRACY TO VIOLATE RICO</u>

67. Plaintiffs  repeat and reallege  all of the allegations above as if fully alleged herein.

68. This count is brought by the Plaintiffs defendants Whiting Turner, Schuster and Bulldog

(collectively the "RICO Defendants") alleging a cause of action under 18 U.S.C. §1962(d), for

injuries due to Defendants control of a RICO enterprise under §18 U.S.C. 1962(b) and for conspiring to violate 18 U.S.C.§ 1962(c).

69. At all times, the Plaintiffs and RICO Defendants were "persons" pursuant to § 1961(3).

70. At all times, Whiting Turner, a corporation, was an enterprise" per to § 1961(4).

71. At all relevant times, Shuster Construction and Bulldog Construction, both corporations, were an "enterprise" pursuant to § 1961(4).

72. At all relevant times, the three corporations engaged in, and their respective activities affected, interstate commerce, pursuant to § 1961(4).

73. All of the emails, numerous telephone calls, faxed communications and meetings noted above were made in furtherance of the sham minority contracting fraud scheme. Therefore all of the communications were made in violation of the mail and wire fraud statutes. Plaintiffs were defrauded by one or more of these emails and telecoms. This pattern of email and telecoms occurred over a period of 9 months from the date the Community Benefits Agreement began.

74. Whiting Turner, Schuster and Bulldog agreed to participate, thus knowingly and willfully became members of a conspiracy by objectively indicating, through their words and actions, their agreement to conduct or participate, directly or indirectly, in the conduct of the affairs of the sham minority business certification fraud enterprise through a pattern of racketeering activity.

75. At least one of the conspirators committed at least one overt act during the existence of the conspiracy in an effort to accomplish some object or purpose of the conspiracy, as shown by the overt acts described above.

76. Plaintiff assert claims against these RICO Defendants for conspiring to violate § 1962(c), which prohibits any person employed by or associated with an enterprise from participating in the affairs of the enterprise through a pattern of racketeering activity.

77. This conspiracy to violate § 1962(c) and/or § 1962(b), is a violation of § 1962(d).

## COUNT TWO – CIVIL CONSPIRACY

78.  Plaintiff re-alleges paragraphs numbered 1-77 as if fully set forth herein.

79.   Defendants jointly planned, participated and benefited from the unauthorized certification of Bulldog and by taking of Plaintiffs' minority contracting opportunities employed deceit and fraud by way of false statements and representations to Plaintiffs in furtherance of their plan.

80.   As a proximate cause of Defendants concerted actions, Plaintiffs lost the $360,000,000 in minority contracting dollars that was promised based on the Community Benefits Agreement.

WHEREFORE, Plaintiff pray for judgment jointly and severally against Defendants in the amount of **$360,000,000.00** (Three Hundred Sixty Million Dollars) as compensatory damages and **$1,000,000.00** (One Million Dollars) punitive damages, attorneys fees, costs.

## COUNT THREE – PRESENTING FALSE CLAIMS AND OBTAINING PAYMENT FOR FALSE CLAIMS FROM THE GOVERNMENT 31 U.S.C. § 3729 (1-2)

81.  Plaintiffs re-allege paragraphs numbered 1-80 as if fully set forth herein and brings this claim in the capacity as Relators for the United States government and as individual Plaintiffs.

82.  On September 29, 2014, Defendant Brown submitted to the U.S. Dept. of Housing and Urban Development ("HUD") the County's final FY 2014 Consolidated Annual Performance and Evaluation Report ("CAPER") for the purpose of continuing and receiving the annual housing and community development funding from HUD - approximately $90 million FY 2014. (and an estimated ($92 million for FY 2015).  Defendant Brown submitted the CAPER, he knew or should have know that his representations regarding Section 3 compliance were incorrect, thus the County fraudulently received HUD funds.

WHEREFORE, Plaintiff/Relators pray for judgment jointly and severally against Defendant Brown in favor of the United States in the amount of **$182,000,000.00** (One  Hundred

and Eighty Five  Million Dollars) as compensatory damages and **$1,000,000.00** (One Million

Dollars) punitive damages, attorneys fees, costs.

## COUNT FOUR -  NEGLIGENCE

83.  Plaintiff re-alleges paragraphs numbered 1-82 as if fully set forth herein.

84.  Defendants Schuster and Bulldog  as licensed and bonded professionals, owed a duty of

reasonable care to Plaintiffs to properly administer and handle minority contracting

responsibilities they had entrusted to them.

85.  Defendants MGM and Whiting Turner breached their duty when they failed to detect the

improper MBE status asserted by Bulldog through intentional and fraudulent tactics.

WHEREFORE Plaintiffs  prays for judgment jointly and severally against Defendants in

the amount of **$300,000.000 (compensatory damages), $100,000.00 (punitive damages),**

attorneys fees, costs.

**The Plaintiffs hereby demand for a jury trial.**

Respectfully submitted,

   /s/  Randy McRae
Randy McRae, Esq. #10927
10640 Campus Way South, Ste. 110
Landover,  Maryland   20785
(301)421–7983
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

This is to certify that, on the  20th  day of April, 2015, a copy of the foregoing proposed
Complaint was electronically mailed first class, to the following: Clerk, US District Court for the
District of  Maryland, Greenbelt Division, Greenbelt, Maryland  20769

   /s/  Randy McRae
Randy McRae